Troy MULLINS and Marion Martin, Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 21, 1964.

John Y. Brown, Lexington, for appellants.

John B. Breckinridge, Atty. Gen., Holly Conley, Commonwealth's Atty., Prestonsburg, Ray Corns, Asst. Atty. Gen., for appellee.

MOREMEN, Judge.

Appellants, Troy Mullins and Marion Martin, were convicted in the Floyd Circuit Court of voluntary manslaughter and each was sentenced to confinement of two years and one day in the penitentiary. Both men were peace officers. They killed John May at his home where they had gone for the purpose of making an arrest under a war-

rant. These are the events which led up to the fatal shot:

John May had been in trouble resulting from the alleged illegal sale of intoxicating liquors. On the 25th of August, 1962, he kidnapped Deputy Sheriff Willie Johnson, and a purported witness, William Younce. He held them at gunpoint for some time, tied them with rope and finally, under the threat of death, forced them to sign a sworn statement before a deputy county clerk, whom he had summoned. The substance of the statement was that they knew nothing about John May's having been in the illicit whiskey business. After he obtained the affidavit he released the two men. Later, they appeared before the police judge of Wayland and obtained a warrant for May's arrest. The judge of that court requested appellants, Troy Mullins and Marion Martin, to make the arrest. This apparently was done because Troy Mullins, an experienced police officer, had been a friend of John May for many years and it was believed that May, who evidently was in a disturbed mental condition, would not resist arrest by Mullins. It was shown that members of the state police and the sheriff's office were also searching for May. After going to Drift, Ky., where appellants had seen May earlier in the day, they went to his home on Cow Creek in Floyd County, where the deceased lived and had been living for some time with a woman by the name of Katherine Martin. There is a contrariety of evidence as to what happened at that time. The officers testified that they entered the room where May was seated at a table eating dinner, with a gun beside his plate. May jumped from his seat, grabbed his gun, approached the officers in a crouched position, fired and hit Troy Mullins. May was so close to him that the discharge burned Mullins' shirt. The bullet pierced Mullins' shoulder and the powder burned his hand. Thereupon Mullins fired, as did his companion Officer Martin. Aside from the appellants and the decedent, Katherine Martin was the only eyewitness to the homicide. She testified, in substance that appellants walked into the room and shot decedent while he was still seated in his chair.

The first trial resulted in a hung jury. After the conclusion of the second trial and the conviction, Katherine Martin left Kentucky and went to Columbus, Ohio. From there she sent for the Commonwealth's Attorney and gave him a sworn statement which, in effect, stated that she perjured herself at the trial and that the testimony given by the officers was a true account of what actually took place. Later, counsel for appellants, upon notice, took the deposition of Katherine Martin in which she stated that during the time of the trials she was under considerable coercion from members of the decedent's family, in that they had threatened that her four illegitimate children would be taken from the relief roll.

Appellants moved for a new trial under CrR 10.02 and 10.06 on the ground of newly discovered evidence. The court overruled the motion.

On this appeal the attorney general's office briefed all points raised by appellants in their brief and resisted reversal of the case. However, in response to a motion for an oral argument, it was stated that the attorney for the Commonwealth could not escape the feeling that in all fairness a new trial should be granted. The response stated:

> "It is the duty of this office, as we visualize it, to insure that justice is meted to each and everyone alike. By the same token, it is our responsibility to see that injustice is not done to anyone. It is for this reason that we respectfully submit that this case should be remanded to the Trial Court and tried anew. We trust that our frankness in this matter will meet with the approval of the Bench and the Bar."

■ This Court has not liberally endorsed the granting of new trials in cases where the newly discovered evidence is only impeaching or cumulative in its nature. However, when it appears that there might

be a miscarriage of justice if a new trial were not granted, the Court has shown no hesitancy in granting one.

In McGregor v. Commonwealth, Ky., 253 S.W.2d 624, this is written:

"We recognize the general rule to be that a new trial will not be granted for newly discovered evidence which is only impeaching in its nature. But the rule should be cautiously applied and when the discovered evidence is of such compelling weight that it probably would have induced the jury to reach a different verdict, a new trial will be granted. Tyree v. Commonwealth, 160 Ky. 706, 170 S.W. 33; Hensley v. Commonwealth, 241 Ky. 367, 43 S.W.2d 996."

Similarly in Shepherd v. Commonwealth, 267 Ky. 195, 101 S.W.2d 918, it was said:

"Ordinarily, a new trial will not be granted for newly discovered evidence impeaching in its nature or cumulative. Yet, when it seriously affects the testimony of the sole or all of the principal witnesses upon whose testimony it is manifest the conviction was had, and it is reasonably certain that had the evidence been heard, it would probably have induced a different conclusion by the jury, the recognized exception to the rule—always to be administered with caution—becomes operative. Hensley v. Commonwealth, 241 Ky. 367, 43 S.W.(2d) 996; Elkins v. Commonwealth, 245 Ky. 199, 53 S.W.(2d) 358."

■ The new evidence offered in this case is of such compelling weight that we are convinced if it had not been for the false testimony of Katherine Martin, a jury of fair minded people probably would be constrained to return a verdict of not guilty.

Judgment reversed.

PALMORE, Judge (concurring).

I concur in the result, but only because of the position taken by the Attorney General. Of itself, the about-face of the witness, Katherine Martin, does not satisfy me that the judgment should be vacated. I cannot join in encouraging perjury.

STEWART, J., concurs in this position.